## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **JACOB L.**,[1] | Case No. 3:23-cv-0089-IM |
| Plaintiff, | **OPINION AND ORDER AFFIRMING THE COMMISSIONER OF SOCIAL SECURITY'S DENIAL OF PLAINTIFF'S APPLICATION** |
| v. | |
| **MARTIN O'MALLEY**,[2] Commissioner of the Social Security Administration, | |
| Defendant. | |

Lisa R. Lang, Johnston Porter Law Office P.C., 5200 SW Meadows Rd., Suite 150, Lake Oswego, OR 97035. Attorney for Plaintiff.

Natalie K. Wight, United States Attorney, and Kevin C. Danielson, Assistant United States Attorney, United States Attorney's Office, 1000 SW Third Avenue, Suite 600, Portland, Oregon 97204; Jennifer Forsyth, Special Assistant United States Attorney, Office of the General Counsel, Social Security Administration, 6401 Security Boulevard, Baltimore, MD 21235. Attorneys for Defendant.

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

[2] Former Acting Commissioner of the Social Security Administration Kilolo Kijakazi has been substituted for her confirmed successor Commissioner Martin O'Malley. *See* Fed. R. Civ. P. 25(d).

PAGE 1 – OPINION AND ORDER AFFIRMING THE COMMISSIONER OF SOCIAL SECURITY'S DENIAL OF PLAINTIFF'S APPLICATION

**IMMERGUT, District Judge**

Plaintiff Jacob L. seeks review under 42 U.S.C. § 405(g) of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") pursuant to the Social Security Act. In particular, Plaintiff challenges the evidence on which the ALJ relied in determining his "residual functional capacity" ("RFC"). For the following reasons, this Court AFFIRMS the Commissioner's decision.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039). "This is a highly deferential standard of review." *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009).

If the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (citation omitted). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th Cir. 2004) (citation omitted). "[A] reviewing court must consider

PAGE 2 – OPINION AND ORDER AFFIRMING THE COMMISSIONER OF SOCIAL SECURITY'S DENIAL OF PLAINTIFF'S APPLICATION

the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quotation marks omitted) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). A reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

## BACKGROUND

### A. Plaintiff's Application Process

Plaintiff was born on December 10, 1993. AR 162. Plaintiff filed an application for DIB on December 3, 2020, alleging disability since October 23, 2020, when he was twenty-six years old. *Id.* Plaintiff's application was denied on February 24, 2021. AR 74.

Plaintiff then requested a hearing, and he appeared with counsel at an administrative hearing on August 30, 2022, before Administrative Law Judge ("ALJ") Derek Johnson. AR 33. On September 7, 2022, the ALJ issued the unfavorable decision now before this Court. AR 14.

### B. The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R. §§ 404.1520 (DIB), 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential process asks the following series of questions:

PAGE 3 – OPINION AND ORDER AFFIRMING THE COMMISSIONER OF SOCIAL SECURITY'S DENIAL OF PLAINTIFF'S APPLICATION

1.    Is the claimant performing "substantial gainful activity?" 20 C.F.R.
§§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving
significant mental or physical duties done or intended to be done for pay
or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing
such work, she is not disabled within the meaning of the Act. 20 C.F.R.
§§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing
substantial gainful activity, the analysis proceeds to step two.

2.    Is the claimant's impairment "severe" under the Commissioner's
regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An
impairment or combination of impairments is "severe" if it significantly
limits the claimant's physical or mental ability to do basic work activities.
20 C.F.R. §§ 404.1520(c), 416.920(c). Unless expected to result in death,
this impairment must have lasted or be expected to last for a continuous
period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the
claimant does not have a severe impairment, the analysis ends. 20 C.F.R.
§§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe
impairment, the analysis proceeds to step three.

3.    Does the claimant's severe impairment "meet or equal" one or more of the
impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so,
then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii),
416.920(a)(4)(iii). If the impairment does not meet or equal one or more of
the listed impairments, the analysis continues. At that point, the ALJ must
evaluate medical and other relevant evidence to assess and determine the
claimant's "residual functional capacity" ("RFC"). This is an assessment
of work-related activities that the claimant may still perform on a regular
and continuing basis, despite any limitations imposed by his or her
impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)–(c), 416.920(e),
416.945(b)–(c). After the ALJ determines the claimant's RFC, the analysis
proceeds to step four.

4.    Can the claimant perform his or her "past relevant work" with this RFC
assessment? If so, then the claimant is not disabled. 20 C.F.R.
§§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform
his or her past relevant work, the analysis proceeds to step five.

5.    Considering the claimant's RFC and age, education, and work experience,
is the claimant able to make an adjustment to other work that exists in
significant numbers in the national economy? If so, then the claimant is
not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v),
404.1560(c), 416.960(c). If the claimant cannot perform such work, he or
she is disabled.

PAGE 4 – OPINION AND ORDER AFFIRMING THE COMMISSIONER OF SOCIAL
SECURITY'S DENIAL OF PLAINTIFF'S APPLICATION

20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Bustamante*, 262 F.3d at 953; *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140–41. The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.* at 1099, 1100; *see also* 20 C.F.R. §§ 404.1566, 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953–54; *Tackett*, 180 F.3d at 1099.

## C.  The ALJ's Decision

At step one of the sequential evaluation process, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since October 23, 2020. AR 19. At step two, the ALJ found that Plaintiff had a number of "severe" impairments: schizoaffective disorder; bipolar disorder; depression; adjustment disorder; anxiety; and impulse control disorder. AR 20. At step three, the ALJ found that Plaintiff's severe impairment did not "meet or equal" any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 20–21. The ALJ determined next that Plaintiff had the RFC "to perform a full range of work at all exertional levels," and could "tolerate occasional changes in a routine work setting" and "occasional

interactions with the general public, coworkers, and supervisors." AR 21. At the same time,

though, the ALJ imposed several conditions, including that Plaintiff would not be able to

"perform detailed tasks that require more than 30 days to learn" nor "perform work requiring

a specific production rate, such as assembly line work." AR 21. At step four of the sequential

analysis, the ALJ held that Plaintiff's RFC meant that he could perform past relevant work as

a lumber straightener. AR 27. The ALJ also found that there were at least three other jobs that

Plaintiff could perform: industrial cleaner, hand packager, and laundry laborer. AR 28.

Because such jobs existed in large numbers in the national economy, the ALJ concluded,

Plaintiff was not disabled between October 23, 2020 and September 7, 2022. AR 28.

## DISCUSSION

Plaintiff makes several argument disputing the ALJ's conclusion that Plaintiff was not

disabled. According to Plaintiff, the ALJ improperly (1) rejected Plaintiff's symptom testimony;

(2) discounted the medical opinions of Doctors Scott Kaper, Sergiy Barsukov, and Julie

Anderson; (3) ignored the Department of Veterans Affairs ("VA") disability rating; (4)

discounted the third-party statement by Plaintiff's wife; and (5) miscalculated Plaintiff's RFC.

For the following reasons, this Court rejects each argument.

### A.  Plaintiff's Subjective Symptom Testimony

Plaintiff argues that the ALJ failed to give clear and convincing reasons for discounting

Plaintiff's symptom testimony and that the ALJ made several other legal errors. Plaintiff's Brief

("Pl.'s Brief"), ECF 9 at 11–15. As discussed below, the ALJ's analysis was clear and

convincing, and therefore, the ALJ did not err.

PAGE 6 – OPINION AND ORDER AFFIRMING THE COMMISSIONER OF SOCIAL
SECURITY'S DENIAL OF PLAINTIFF'S APPLICATION

In the Ninth Circuit, ALJs must engage in a two-step process for evaluating a claimant's subjective testimony about the severity and effect of the claimant's symptoms. *Vasquez. v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ "must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)).

Second, "if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Id.* (quoting *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)). In formulating these reasons, an ALJ must consider "whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between [a claimant's] statements and the rest of the evidence, including [the claimant's] history, the signs and laboratory findings, and statements by . . . medical sources or other persons about how [the claimant's] symptoms affect [him]." 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4). "Contradiction with the medical record is sufficient basis for rejecting the claimant's subjective testimony." *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008) (citation omitted). "The standard isn't whether [the] court is convinced, but instead whether the ALJ's rationale is clear enough that it has the power to convince." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022).

1.  **The ALJ Gave Clear and Convincing Reasons for Discounting Plaintiff's Subjective Symptom Allegations**

Plaintiff reported being limited in talking, hearing, memory, completing tasks, concentration, understanding, following instructions, and getting along with others. AR 22, 191. Plaintiff also testified that he could not work due to anxiety, suicidal thoughts, hallucinations affecting his sleep, and paranoia. AR 22, 48. Plaintiff alleged, too, that he has difficulty getting out of bed due to depression. AR 22, 66.

The ALJ partially discounted Plaintiff's testimony because, in the ALJ's view, Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." AR 22. In essence, the ALJ credited Plaintiff's testimony regarding the existence of Plaintiff's mental health issues, but accorded less weight to Plaintiff's testimony on the severity of those issues.

In assessing Plaintiff's symptom testimony, the ALJ concluded that a longitudinal assessment of Plaintiff's treatment records contradicted Plaintiff's testimony regarding the severity of his mental health impairments. AR 22–23. According to treatment notes, Plaintiff reported doing well and that his hallucinations and paranoia had mostly resolved following two brief hospitalizations in late 2020. AR 22 (citing AR 343–347, 361, 369). Then, in early 2021, Plaintiff reported that he was "doing good." *Id.* (citing AR 332). The ALJ noted Plaintiff experienced breakthrough symptoms of hallucinations, depression, and anxiety in March 2021 but that those same symptoms had improved one month later. AR 22–23 (citing AR 313–22, 673–78). Plaintiff's treatment notes during May and June 2021 did not identify any significant issues with Plaintiff managing his symptoms. AR 23 (citing AR 673–78). The ALJ then observed that the evidence did not document any symptoms from July 2021 through December 2021. *Id.*

PAGE 8 – OPINION AND ORDER AFFIRMING THE COMMISSIONER OF SOCIAL SECURITY'S DENIAL OF PLAINTIFF'S APPLICATION

Although there were reports of depression and anxiety in January 2022, the ALJ cited treatment notes showing Plaintiff's symptoms were fairly well-managed and stable from February 2022 through June 2022. *Id.* (citing AR 1188, 1192, 1217, 1223, 1239, 1248, 1267, 1287, 1294, 1303, 1321, 1327, 1343). And even though Plaintiff reported increased anxiety in July 2022 related to the upcoming disability hearing, he also reported good mood that same month. *Id.* (citing AR 1170–71, 1174, 1183). In sum, the ALJ observed that treatment notes showed "improved and fairly stable symptoms" during the relevant period and concluded that Plaintiff's mental health impairments were less limiting that he alleged. AR 22–23.

The ALJ cited other inconsistencies between Plaintiff's testimony and treatment notes by medical providers. These notes from mental health appointments rarely observed signs of significant difficulty with concentration or memory. AR 23. Further, Plaintiff's psychiatrist most often observed him to have a logical and organized thought process. *Id.* From this information, the ALJ concluded that Plaintiff was more capable of completing tasks than he alleged. *Id.*

The ALJ also noted that Plaintiff's treatment history was inconsistent with his allegations about the extent of his limitations. An ALJ may consider situational stressors as a clear and convincing reason to reject a plaintiff's allegations about the extent of his limitations. *See Plute v. Kijakazi*, No. 21-35989, 2022 WL 16630274, at *2 (9th Cir. Nov. 2, 2022). Before Plaintiff's hospitalizations in late 2020, his symptoms had been stable for many years. AR 22 (citing AR 301–02, 542). Treatment notes cited by the ALJ show that at the time of Plaintiff's hospitalizations his increased symptoms were caused by a medication change and stress from changing his planned occupation. *Id.* (citing AR 301–02). Plaintiff again experienced increased symptoms in January 2022, but at this time he reported that he quit his job coaching baseball

because of an abusive boss. AR 23 (citing AR 1374–78). Plaintiff also encountered increased

anxiety during summer 2022 due to his upcoming Social Security hearing. AR 23 (citing AR

1174, 1187). The ALJ concluded that these instances of increased symptoms were caused by a

change in medication or situational stress—not his mental health impairments. AR 22–23; *see*

*Plute*, 2022 WL 16630274, at *2; *see also Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001,

1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not

disabling for the purpose of determining eligibility for SSI benefits.").

The ALJ also found Plaintiff's daily activities inconsistent with his testimony of severe

limitations. In his function report, Plaintiff reported that he can drive, travel alone, and handle his

own money. AR 24, 187, 189. Plaintiff also reported spending time with friends, playing

baseball, and travelling out of town. AR 24, 668, 670, 1265, 1293. Based on these activities, the

ALJ reasonably concluded that Plaintiff was not as limited in completing tasks and getting along

with others as he alleged. AR 24.

Thus, "the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*,

50 F.3d 748, 750 (9th Cir. 1995) (citation omitted). Instead, the ALJ identified "specific, clear,

and convincing reasons supporting a finding that [Plaintiff's] limitations were not as severe as he

claimed." *Ahearn v. Saul*, 988 F.3d 1111, 1117 (9th Cir. 2021); *see also Rollins v. Massanari*,

261 F.3d 853, 857 (9th Cir. 2001) (stating that a reasonable interpretation of a claimant's

testimony supported by substantial evidence will not be second-guessed by the reviewing court).

### 2. The ALJ Did Not Commit Legal Error When He Discounted Plaintiff's Subjective Symptom Allegations

Plaintiff argues that the ALJ made four errors when he discounted testimony about the

severity of Plaintiff's symptoms. According to Plaintiff, (a) the ALJ made general findings that

Plaintiff's symptoms had improved instead of offering clear and convincing evidence to support

his conclusion; (b) the ALJ ignored evidence from Plaintiff's treatment records showing that

Plaintiff continued to experience symptoms of mental health impairments; (c) the ALJ erred by

relying on Plaintiff's daily activities to discount his symptom testimony; and (d) the ALJ erred

by failing to compare Plaintiff's testimony with other medical evidence in the record. Pl.'s Brief,

ECF 9 at 12–15. But as explained below, the ALJ did not err in discounting Plaintiff's testimony.

### a.   The ALJ Cited Clear and Convincing Evidence that Plaintiff's Symptoms Had Improved

Plaintiff first argues that the ALJ erred by relying on "general findings" that Plaintiff

improved instead of identifying "what testimony is not credible and what evidence undermines

the claimant's complaints." Pl.'s Brief, ECF 9 at 13–14 (quoting *Lester v. Chater*, 81 F.3d 821,

834 (9th Cir. 1995), *superseded on other grounds by regulation*, Revision to Rules Regarding the

Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5852 (Jan. 18, 2017) (codified at 20 C.F.R.

pts. 404 & 416). But Plaintiff's portrayal of the ALJ's analysis is inaccurate.

This case is dispositively distinguishable from *Lester*. In *Lester*, the ALJ concluded that

the claimant's complaints were "not credible" and "exaggerated" without citing specific reasons

other than the lack of objective evidence. *Lester*, 81 F.3d at 834. In contrast, the ALJ here

explained that Plaintiff's allegations were inconsistent with specific treatment notes by Plaintiff's

medical providers, which showed improved and largely stable mental health symptoms. The ALJ

noted that this trend undermined Plaintiff's allegations that his symptoms prevented him from

working fulltime, completing tasks, and that he had difficulty getting out of bed. AR 23.

Rather than rely on "general findings" as Plaintiff claims, the ALJ's longitudinal

assessment of Plaintiff's symptoms "cited specific, clear, and convincing examples across a

multi-year period contrasting [Plaintiff's] subjective [symptom] testimony with objective medical evidence"—satisfying this Court's review. *Smartt*, 53 F.4th at 499.

### b.  The ALJ Did not Ignore Evidence that Plaintiff Continued to Experience Symptoms Related to his Mental Health Impairments

Plaintiff next argues that the ALJ disregarded probative evidence when he concluded that Plaintiff's symptoms had improved. Pl.'s Brief, ECF 9 at 14–15. Plaintiff cites several medical treatment notes showing that Plaintiff continued to experience breakthrough symptoms related to his mental health impairments. *Id.* Although "it is error for an ALJ to pick out a few isolated instances of improvement . . . as a basis for concluding that a claimant is capable of working," *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014), the ALJ did not ignore evidence of breakthrough symptoms as Plaintiff contends.

As noted above, the ALJ acknowledged that Plaintiff periodically experienced breakthrough symptoms, yet concluded that the longitudinal analysis of Plaintiff's medical treatment records showed Plaintiff's symptoms had improved and stabilized. AR 22–23. Because the ALJ considered Plaintiff's breakthrough symptoms and his conclusion was "supported by a broad set of mental status exams covering the entire relevant time period," the ALJ did not ignore probative evidence here. *See Wesselius v. Kijakazi*, No. 20-35386, 2021 WL 4948928, at *1 (9th Cir. Oct. 25, 2021). Plaintiff asks this Court to reach a different conclusion based on the evidence in the record. But, because the ALJ's decision to discount Plaintiff's symptom testimony is supported by a clear and convincing explanation, this Court must defer to the ALJ's finding. *See Batson*, 359 F.3d at 1193 (stating that a court must defer to the Commissioner's decision "if evidence exists to support more than one rational interpretation" (citation omitted)).

### c. The ALJ Properly Relied on Plaintiff's Daily Activities

Next, Plaintiff argues that the ALJ improperly relied on daily activities to discount his symptom testimony because these activities were performed sporadically and do not meet the threshold for transferrable work activities. Pl.'s Brief, ECF 9 at 11–13 (first citing *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998); and then citing *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007)). The ALJ did not err by considering Plaintiff's daily activities.

An ALJ may consider whether a plaintiff's daily activities are inconsistent with his alleged symptoms. *Smartt*, 53 F.4th at 499; *see also* 20 C.F.R. § 404.1529(c)(3)(i). "Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012) (citations omitted), *superseded on other grounds by regulation*, Revisions to Rules Regarding the Evaluation of Medical Evidence; Correction, 82 Fed. Reg. 15132-01 (Mar. 27, 2017).

The ALJ noted that Plaintiff's activities driving, traveling alone, handling his own money, spending time with friends, playing baseball, and travelling out of town demonstrated that Plaintiff was not as limited in completing tasks and getting along with others as he alleged. AR 24. Because Plaintiff's daily activities contradicted his allegations of a totally debilitating impairment, the ALJ did not err as Plaintiff contends. *See Molina*, 674 F.3d at 1113; *see also Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (affirming ALJ's decision to discount a claimant's testimony in part because the claimant's testimony about the intensity of her pain was

inconsistent with her ability "to perform various household chores such as cooking, laundry, washing dishes, and shopping.").[3]

### d. The ALJ Did Not Fail to Examine Other Medical Source Evidence.

Plaintiff also claims that the ALJ should have examined whether Plaintiff's testimony was consistent with the medical reports of Dr. Julie Anderson and the VA's disability rating. Pl.'s Brief, ECF 9 at 13–14; Plaintiff's Reply ("Pl.'s Reply"), ECF 14 at 12. ALJs are required to consider medical sources when evaluating a claimant's symptom testimony. *See* 20 C.F.R. § 404.1529(c); SSR 16-3p, 2017 WL 5180304, at \*4 (Oct. 25, 2017). Here, the ALJ did so; he examined the medical reports of Dr. Anderson and the VA's disability rating, finding that they were unpersuasive. *See* AR 26. Thus, it was unnecessary for the ALJ to compare Plaintiff's testimony to the reports of Dr. Anderson and the VA's disability rating. *See Gentry S. v. Kijakazi*, Case No. 20-cv-05814-SVK, 2022 WL 1601413, at \*6 (N.D. Cal. Mar. 31, 2022) ("[T]he ALJ did not need to consider the consistency of opinions he had found unpersuasive with other opinions he also had found unpersuasive." (citation omitted)).

### B.  Substantial Evidence Supports the ALJ's Evaluation of the Medical Opinion Evidence

Next, Plaintiff argues that the ALJ made several errors in his review of the medical opinions prepared by Doctors Scott Kaper, Ph.D., Sergiy Barsukov, Psy.D., and Julie Anderson, MD. Pl.'s Brief, ECF 9 at 7–20. Yet as explained below, the ALJ did not err and substantial evidence supports the ALJ's decision to discount these medical opinions.

---

[3] Plaintiff raises issue with Defendant's citation to *Ghanim v. Colvin*, stating that case relies on a rescinded regulation no longer relevant to evaluating a claimant's testimony. Pl.'s Reply, ECF 14 at 10–11 (citing *Ghanim v. Colvin*, 763 F.3d 1154, 1165 (9th Cir. 2014)). But because it was nonetheless proper for the ALJ to discount Plaintiff's testimony based on his daily activities, Defendant's reliance on *Ghanim* does not evidence any error by the ALJ.

Because Plaintiff filed for DIB after March 27, 2017, the applicable rules for evaluating medical opinions are contained at 20 C.F.R. § 404.1520c. Under these requirements, an ALJ determines which medical opinions are most "persuasive." 20 C.F.R. § 404.1520c(a)–(b). In determining persuasiveness, the ALJ considers the "supportability" and "consistency" of the opinions, followed by additional subfactors. 20 C.F.R. § 404.1520c(c). The regulations require an ALJ to "articulate . . . how persuasive [he] find[s] all of the medical opinions" and "explain how [he] considered the supportability and consistency factors." 20 C.F.R. § 404.1520c(b). Supportability means that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion[ ] . . . the more persuasive the medical opinion[ ] . . . will be." 20 C.F.R. § 404.1520c(c)(1). Likewise, "[t]he more consistent a medical opinion[ ] . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion[ ] . . . will be." 20 C.F.R. § 404.1520c(c)(2). Under the revised regulations, an ALJ cannot reject a medical opinion "without providing an explanation supported by substantial evidence." *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).

Applying this regulation, this Court examines the ALJ's findings on the medical reports of doctors Kaper, Barsukov, and Anderson and holds that these findings are amply supported by substantial evidence.

### 1. State Agency Psychiatric Reviewers - Doctors Scott Kaper and Sergiy Barsukov

The administrative record contains mental assessments from state agency psychological consultants Scott Kaper, Ph.D., and Sergiy Barsukov, Psy.D. (collectively, "state agency reviewers" or "reviewers"). Both psychologists reported that Plaintiff was limited to simple two

PAGE 15 – OPINION AND ORDER AFFIRMING THE COMMISSIONER OF SOCIAL SECURITY'S DENIAL OF PLAINTIFF'S APPLICATION

to three step tasks for normal two-hour work periods and could not sustain focus on more

detailed or complex tasks ("reviewers' task limitation"). AR 63, 70. The reviewers also reported

that Plaintiff was limited to "brief and routine" encounters with the public and coworkers but

capable of acceptable working relationships with supervisors ("reviewers' social limitation").

AR 63, 71.

 The ALJ found these conclusions partially persuasive. Plaintiff objects to the ALJ's

analysis of the reviewers' task and social limitations. Pl.'s Brief, ECF 9 at 8–11, 13–15; Pl.'s

Reply, ECF 14 at 5–8. However, the ALJ did not err in his decision to discount the reviewers'

limitations.

 This Court will discuss each limitation in turn.

### a. The Reviewers' Task Limitation

 Plaintiff argues that the ALJ erred in finding the reviewers' two to three step task

limitation unsupported and inconsistent with evidence in the record. Pl.'s Brief, ECF 9 at 8–17;

Pl.'s Reply, ECF 14 at 5–8. However, as explained below, substantial evidence supports the

ALJ's determination.

 In finding that the reviewers' task limitation was not well supported, the ALJ cited Dr.

Kaper's notes showing that Plaintiff's symptoms had improved following his hospitalization,

Plaintiff was not observed to possess gross deficits in concentration and memory, and Plaintiff

was returning to his academic pursuits. AR 25 (citing AR 59–61). The ALJ also cited Dr.

Barsukov's notes that Plaintiff was working for Door Dash and interviewing for a job as a

personal trainer. *Id.* (citing AR 67–68). Dr. Barsukov also noted that Plaintiff had been

PAGE 16 – OPINION AND ORDER AFFIRMING THE COMMISSIONER OF SOCIAL
SECURITY'S DENIAL OF PLAINTIFF'S APPLICATION

experiencing improved depressive symptoms and minimal auditory hallucinations. *Id.* (citing AR 67–68).

The ALJ also concluded that the reviewers' task limitation was inconsistent with treatment notes discussing Plaintiff's intact memory, mostly logical and organized thought process, and improved and stable symptoms. AR 25. The ALJ noted that reports of significant or persistent difficulty concentrating were absent from notes of medical providers in the administrative record. *Id.* Further, the ALJ found that Plaintiff's ability to drive, manage money, and travel out of town were inconsistent with the reviewers' task limitation because they required more than two to three steps to perform. AR 25. For these reasons, this Court defers to the ALJ's finding that the reviewers' task limitation was not well supported and inconsistent with the record.

Plaintiff's counterarguments are unavailing. First, Plaintiff argues that the ALJ erred by disregarding probative evidence from other portions of the administrative record— treatment notes of other medical providers, Plaintiff's testimony, Plaintiff's wife's testimony, and medical reports from Dr. Anderson and the Veterans Administration. Pl.'s Brief, ECF 9 at 14–16; Pl.'s Reply, ECF 14 at 7–8. But the ALJ acknowledged these parts of the record in his opinion and found that they were unpersuasive regarding the severity of Plaintiff's symptoms. AR 21–24, 26–27. The ALJ also noted that although Plaintiff continued to experience some symptoms involving suicidal ideation and auditory hallucinations, a longitudinal assessment of Plaintiff's symptoms showed that they had improved and stabilized. AR 25.

Plaintiff then argues that the ALJ should have concluded that Plaintiff's improvement in mental health symptoms came from eliminating stress from his life. Pl.'s Brief, ECF 9 at 10. But

the reviewers did not definitively make this finding in their reports. *See* AR 58–64, 66–72. In any

event, the alternative interpretation offered by Plaintiff does not evidence error by the ALJ. *See*

*Thomas*, 278 F.3d at 954 ("Where the evidence is susceptible to more than one rational

interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld."

(citation omitted)). The question for this Court is "whether there is substantial evidence to

support the Commissioner's actual finding that claimant is not disabled," "not whether there is

substantial evidence that could support a finding of disability." *Jamerson v. Chater*, 112 F.3d

1064, 1067 (9th Cir. 1997). Because the ALJ relied on substantial evidence in assessing the

reviewers' task limitation, the ALJ did not err as Plaintiff contends.

### b. The Reviewers' Social Limitation

Plaintiff next challenges the ALJ's decision to discount the reviewers' limitation of

Plaintiff to "brief and routine" encounters with the public and coworkers. Plaintiff argues that the

ALJ failed to assess the supportability of the reviewers' social limitation and disregarded

significant probative evidence in his consistency analysis. Pl.'s Brief, ECF 9 at 8–9, 14–15; Pl.'s

Reply, ECF 14 at 6. Contrary to Plaintiff's arguments, the ALJ did not err finding that the

reviewers' social limitation was neither supported by nor consistent with the record.

In  partially discounting the reviewers' social limitation, the ALJ relied on Dr. Kaper's

notes, stating that Plaintiff was trying to engage more with the community and returning to his

academic pursuits. AR 25 (citing AR 61). The ALJ also considered Dr. Barsukov's notes, which

stated that Plaintiff was working for Door Dash and interviewing for a job as a personal trainer.

AR 25 (citing AR 68). Accordingly, the ALJ concluded that the evidence did not fully support

the reviewers' social limitation. Further, the ALJ discounted the state agency reviewers' social

limitation because their reports relied on vague terms not defined by the Dictionary of

Occupational Titles—terms such as "basic work place [sic] routines and schedules," "frequent or

close contact," and "brief and routine encounters." AR 25–26. For these reasons, the ALJ did not

accept the reviewers' recommendation in full.

However, the ALJ did not fully discount the reviewers' social limitation altogether;

rather, he found that the reviewers' social limitation was partially consistent with evidence of

Plaintiff's social interactions. In reaching this conclusion, the ALJ considered Plaintiff's

appropriate interactions with medical providers and reports of spending time with others. AR 25.

The evidence cited by the ALJ discussed Plaintiff playing baseball, traveling with a friend in

Arizona, and spending time with friends. *See* AR 24 (citing AR 668, 670, 673, 678, 1265). This

evidence is "adequate to support [the ALJ's] conclusion" to partially discount the reviewers'

social limitation. *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted).

Finally, Plaintiff argues that the ALJ did not perform a proper consistency analysis

because he did not compare the reviewers' social limitation to treatment notes of other medical

providers, Plaintiff's testimony, Plaintiff's wife's testimony, the medical report from Dr.

Anderson and the Veterans Administration disability rating. Pl.'s Brief, ECF 9 at 14–16; Pl.'s

Reply, ECF 14 at 7–8. But as stated above, not only did the ALJ perform a longitudinal

assessment of Plaintiff's treatment notes, acknowledging continued symptoms involving suicidal

ideation and auditory hallucinations, but the ALJ also considered these other parts of the record

and found they were not persuasive. *See supra* at 8–10, 14, 17.

PAGE 19 – OPINION AND ORDER AFFIRMING THE COMMISSIONER OF SOCIAL
SECURITY'S DENIAL OF PLAINTIFF'S APPLICATION

Because the ALJ has cited specific reasons supported by the record as to why he partially discounted the reviewers' social limitation, the ALJ's analysis is supported by substantial evidence.

### 2. Dr. Julie Anderson

The administrative record also contains a medical opinion from Dr. Julie Anderson, M.D., Plaintiff's treating physician. Dr. Anderson evaluated Plaintiff in several work-related mental health functional areas. AR 1108–12. She concluded that Plaintiff had marked limitations in remembering procedures, understanding and remembering simple instructions, maintaining attention for two-hour segments, maintaining regular attendance, and getting along with supervisors. *Id.* Dr. Anderson concluded that Plaintiff had extreme limitations in completing an eight-hour workday without the need for additional rest periods and performing work without getting distracted. *Id.* Dr. Anderson also concluded that Plaintiff would have substantial difficulty getting along with supervisors, the public, and coworkers, and would miss more than four days of work per month. *Id.* The ALJ found that Dr. Anderson's report was not persuasive because there was "little support" for her opinion, and it was "inconsistent with improvements in symptoms and other factors." AR 26.

Plaintiff argues that the ALJ's analysis of Dr. Anderson's opinion was not supported by substantial evidence. Pl.'s Brief, ECF 9 at 19–20; Pl.'s Reply, ECF 14 at 8–9. However, this Court disagrees.

As the ALJ identified in his opinion, Dr. Anderson's treatment notes do not support the medical opinion she reached about Plaintiff's mental health. Although Plaintiff showed a slow thought process in one appointment, generally Dr. Anderson's notes describe Plaintiff as

PAGE 20 – OPINION AND ORDER AFFIRMING THE COMMISSIONER OF SOCIAL SECURITY'S DENIAL OF PLAINTIFF'S APPLICATION

showing a logical and organized thought process. AR 26; *see, e.g.*, AR 322–24, 343–47, 675–76,

681–82, 688–90, 1170–71, 1183–84, 1187–88, 1217, 1237–40, 1266–68, 1294–95, 1321, 1336–

38, 1344, 1352–54, 1373–75). Dr. Anderson's notes also indicate that in some appointments,

Plaintiff showed no deficits in concentration and memory. AR 26; *see, e.g.*, AR 344–46, 1183,

1217, 1225–26. Last, Dr. Anderson's notes show that Plaintiff experienced minimal

hallucinations, and improved and stable symptoms. AR 26; *see, e.g.*, AR 344–46, 675–76, 682,

1170–71, 1217, 1225–26, 1238–40, 1295–96, 1320–21, 1336–38, 1352–54, 1374–76.

  The ALJ also found that Dr. Anderson's report was inconsistent with other evidence in

the record. Other healthcare providers reported that Plaintiff experienced improved and stable

symptoms. AR 26; *see, e.g.*, AR 296, 329–30, 331, 369, 668–70, 672–73, 678. The ALJ noted

that other providers did not observe deficits in concentration and memory. AR 26; *see, e.g.*, AR

296, 303–04, 948. These providers also observed Plaintiff's intact memory and organized

thought process. AR 26; *see, e.g.*, AR 320–21, 329–31, 369, 668–70, 672–73, 678. The ALJ also

relied on medical treatment notes showing Plaintiff consistently having appropriate interactions

with medical providers and reports of Plaintiff spending time with others. AR 26. Based on this

evidence, it was reasonable for the ALJ to conclude that the limitations in Dr. Anderson's

opinion were not well supported by her report and inconsistent with other evidence in the record.

*See Valentine*, 574 F.3d at 692 (contradictions between treatment reports and the provider's

medical opinion can serve as substantial evidence for discounting a medical opinion).

  Plaintiff nevertheless argues that the ALJ erred by failing to consider whether Dr.

Anderson's opinion was consistent with his testimony, his wife's third-party statement, and the

VA's disability rating. Pl.'s Brief, ECF 9 at 20; Pl.'s Reply, ECF 14 at 8–9. However, Dr.

Anderson herself did not discuss these evidentiary points in her report. Also, as discussed above and below, the ALJ acknowledged these parts of the record and explained why they were not persuasive. *See supra* at 8–10, 14, 17; *infra* at 22–24.

Plaintiff also argues that the ALJ reached an "incorrect conclusion" by failing to appropriately consider his "perseverating thought patterns causing preoccupations with suicidality" and other probative evidence. Pl.'s Brief, ECF 9 at 19–20; Pl.'s Reply, ECF 14 at 8. But the ALJ reviewed treatment notes by Plaintiff's medical providers, concluding that, despite encountering periodic breakthrough symptoms, the broader trend showed Plaintiff's symptoms had improved and were stable. AR 22–23, 26. Accordingly, the ALJ did not disregard evidence as Plaintiff contends. In essence, Plaintiff is asking this Court to reach a different conclusion from the evidence than the ALJ. Yet "[w]here evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." *Orn*, 495 F.3d at 630 (citation and internal quotation marks omitted). Because the ALJ's finding is supported by substantial evidence, this Court defers to the ALJ's decision to give Dr. Anderson's opinion little weight.

## C. The ALJ Was Not Required to Consider the Veterans Administration Rating

Plaintiff next argues that the ALJ committed error by failing to consider the Department of Veterans Affairs findings in his decision. Brief, ECF 9 at 17. However, under current agency regulations, VA findings need not be considered by the ALJ.

For applications for disability benefits filed on or after March 27, 2017, the VA's disability and employability findings are "inherently neither valuable nor persuasive" when determining disability under the standards of the Social Security Act. 20 C.F.R. §§ 404.1520b(c)(1), 404.1504. Under these regulations, an ALJ "will not provide any analysis in

[his] determination or decision about a decision made by any other governmental agency or a nongovernmental entity about whether" the claimant is "disabled, blind, employable, or entitled to any benefits." 20 C.F.R. § 404.1504 (specifically citing the Department of Veterans Affairs, among other governmental agencies).

Plaintiff applied for disability insurance benefits on December 3, 2020. AR 162. Accordingly, current agency regulations do not require the ALJ to consider the VA's disability rating. *See Kitchen v. Kijakazi*, 82 F.4th 732, 739 (9th Cir. 2023) ("[T]he 2017 regulations removed any requirement for an ALJ to discuss another agency's rating. Thus, it was not error for the ALJ to exclude [the plaintiff's] VA disability rating from her analysis." (citation omitted)).

**D. The ALJ Did Not Err in his Assessment of the Third-Party Statement**

Plaintiff also argues the ALJ erred by failing to compare the third-party statement by Plaintiff's wife with the medical source opinions in the ALJ's consistency assessment. Pl.'s Brief, ECF 9 at 21–22. However, the ALJ considered the third-party statement and appropriately found it unpersuasive.

When an ALJ discounts the testimony of a lay witness, he must give reasons that are germane to each witness. *Valentine*, 574 F.3d at 694.[4] Here, the ALJ noted that the third-party statement by Plaintiff's spouse was "generally consistent" with Plaintiff's allegations. AR 24.

---

[4] Despite language in 20 C.F.R. § 404.1520c(d) indicating that an ALJ need not examine a third-party statement for consistency and supportability, the Ninth Circuit has suggested that its pre-2017 standard requiring "germane" reasons to reject lay witness testimony applies to an ALJ's evaluation of lay witness testimony post-2017. *See Muntz v. Kijakazi*, No. 22-35174, 2022 WL 17484332, at *2 (9th Cir. Dec. 7, 2022). Thus, this Court examines whether the ALJ has stated germane reasons here.

PAGE 23 – OPINION AND ORDER AFFIRMING THE COMMISSIONER OF SOCIAL SECURITY'S DENIAL OF PLAINTIFF'S APPLICATION

The ALJ also concluded that the third-party statement was not persuasive for the same reasons the ALJ discounted Plaintiff's allegations about the severity of his symptoms. *Id.* Because the ALJ was entitled to discount the third-party statement for the same reasons he discounted Plaintiff's own description of his symptoms, the ALJ provided germane reasons for rejecting the third party statement. *See Valentine*, 574 F.3d at 694.

Accordingly, the ALJ did not err in his evaluation of Plaintiff's wife's third-party statement.

## E.  The ALJ's RFC Determination

In step three of the sequential analysis, the ALJ assessed Plaintiff having two limitations that Plaintiff contests: (1) Plaintiff can understand, remember, and carry out simple and detailed tasks that can be learned in 30 days or less ("ALJ's task limitation"), and (2) he can tolerate occasional interaction with the public, coworkers, and supervisors ("ALJ's social limitation"). AR 21. This Court will discuss each limitation in turn.

The ALJ's task limitation is supported by substantial evidence. The ALJ concluded that the following evidence showed Plaintiff was capable of simple and detailed tasks learned in 30 days or less: Plaintiff's treatment notes showed "improved and fairly stable symptoms during much of the period at issue"; Plaintiff's medical providers rarely observed signs of significant difficulty with concentration or memory; Plaintiff's psychiatrist most often observed him to have a logical and organized thought process; Plaintiff's psychiatrist sometimes reported that he showed no signs of gross deficits in concentration or memory; Plaintiff reported he could drive, travel alone, and handle his own money; and Plaintiff worked part-time and traveled out of town during the period at issue. AR 23–24.

PAGE 24 – OPINION AND ORDER AFFIRMING THE COMMISSIONER OF SOCIAL SECURITY'S DENIAL OF PLAINTIFF'S APPLICATION

The ALJ's social limitation is also supported by substantial evidence. The ALJ concluded that the following evidence showed Plaintiff was capable of occasional interactions with the public, coworkers, and supervisors based on the following evidence: treatment notes showed "improved and fairly stable symptoms during much of the period at issue"; medical evidence referencing Plaintiff spending time with friends and playing baseball; appropriate interactions with healthcare providers; and Plaintiff reporting that he got along with authority figures "great." AR 23–24. However, the ALJ also noted that Plaintiff had a difficult interaction with a supervisor in early 2022, and therefore limited Plaintiff's interactions with supervisors based on this evidence. AR 25.

Plaintiff raises two counterarguments, but neither persuades. First, Plaintiff claims that it is unclear how playing baseball and engaging with healthcare workers and authority show that he is capable of occasional interactions with the public, coworkers, and supervisors. Pl.'s Brief, ECF 9 at 11. Plaintiff also raises issue with the ALJ's finding that traveling out of town and driving establish that Plaintiff can perform simple and detailed tasks learned in less than 30 days. *Id.* at 13; Pl.'s Reply, ECF 14 at 7. However, Plaintiff's interacting with authority, teammates and opponents playing baseball, and medical providers demonstrates Plaintiff's ability to engage socially with others. The ALJ also noted that Plaintiff's ability to drive, travel alone, and handle his money suggested that he was capable of more than two to three step tasks because those activities "typically require more steps to perform and suggest the claimant could sustain concentration on detailed tasks that can be learned in 30 days or less." AR 25. This Court will not second-guess the ALJ's reasonable interpretation, even if such evidence could give rise to inferences more favorable to Plaintiff. *See Rollins*, 261 F.3d at 857.

PAGE 25 – OPINION AND ORDER AFFIRMING THE COMMISSIONER OF SOCIAL SECURITY'S DENIAL OF PLAINTIFF'S APPLICATION

Second, Plaintiff argues that the ALJ's RFC determination is merely a lay opinion. Pl.'s Brief, ECF 9 at 16; Pl.'s Reply, ECF 14 at 7–9, 12. But Plaintiff does not identify error here. As emphasized by the Ninth Circuit, it is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity. *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001) (citation omitted). "Further, an ALJ's RFC determination need not precisely reflect any particular medical provider's assessment." *Pinto v. Kijakazi*, Case No. 1:21-cv-00585-SKO, 2022 WL 17324913, at *9 (E.D. Cal. Nov. 29, 2022) (citing *Turner v. Comm'r of Soc. Sec. Admin.*, 613 F.3d 1217, 1223 (9th Cir. 2010)); *see also Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012) (stating that the RFC need not correspond to a medical opinion).

This Court cannot "engage in second-guessing" of how the ALJ evaluated Plaintiff's RFC; this Court must only ask whether substantial evidence supports the ALJ's ultimate conclusions. *Thomas*, 278 F.3d at 959. Because such evidence is replete in the record, as shown throughout this Opinion, this Court affirms the ALJ's decision and the Commissioner's decision in turn.[5]

## CONCLUSION

The Commissioner's decision that Plaintiff was not disabled is AFFIRMED.

**IT IS SO ORDERED**.

---

[5] Plaintiff also argues that because the hypothetical questions the ALJ posed to the Vocational Expert were imprecise and did not include all of Plaintiff's limitations, the ALJ erred at step four and step five of the sequential analysis. Pl.'s Brief, ECF 9 at 16; Pl.'s Reply, ECF 14 at 12. But this contention is unpersuasive. Because, as discussed above, the ALJ properly assessed the medical and nonmedical evidence to determine Plaintiff's RFC, Plaintiff has not shown that the hypothetical question posed to the Vocational Expert was incomplete or that the ALJ's step four and step five analysis was otherwise improper. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175–76 (9th Cir. 2008).

PAGE 26 – OPINION AND ORDER AFFIRMING THE COMMISSIONER OF SOCIAL SECURITY'S DENIAL OF PLAINTIFF'S APPLICATION

DATED this 1st day of February, 2024.

/s/ Karin J. Immergut
Karin J. Immergut
United States District Judge